# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

GARY KUKLA,

        Plaintiff,

v.                                                        Case No. 05-C-575

JO ANNE B. BARNHART, Commissioner
of the Social Security Administration,

        Defendant.

## DECISION AND ORDER

### NATURE OF CASE

The plaintiff, Gary Kukla, commenced this action on May 24, 2005, seeking judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for supplemental security income (SSI) under the Social Security Act, 42 U.S.C. § 405(g). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General L.R. 73.1 (E.D. Wis.). The plaintiff's appeal will be addressed herein.

### PROCEDURAL HISTORY

In October 2001, the plaintiff filed an application for SSI, alleging that he became disabled on January 1, 1994 due to depression, panic attacks and a "bad temper." (Tr. 65-67, 70). The plaintiff's application was denied initially and upon reconsideration. (Tr. 31-39). The plaintiff requested a hearing which was held before an Administrative Law Judge (ALJ) on July 3, 2003. The plaintiff appeared pro se. In a February 11, 2004, decision, the ALJ found that the plaintiff was not disabled and, therefore, not eligible for SSI. On April 30, 2004, the Appeals

Council remanded the plaintiff's case back to the ALJ to address certain specified issues and to issue a new decision.

Another hearing was held on January 27, 2005, before the ALJ. The plaintiff, who was again proceeding pro se, and a vocational expert appeared and testified.

In a February 22, 2005, decision, the ALJ found that the plaintiff had not engaged in substantial gainful activity since October 3, 2001, the date his application for supplemental security income benefits was protectively filed. He further found that the medical evidence established that the plaintiff had been diagnosed with sleep apnea, restless leg syndrome, obesity, diabetes mellitus, dysthmia and panic disorder with agoraphobia, each of which would be considered "severe" under existing law and that he has had a hernia repair. However, the plaintiff's diagnosed impairments do not, either singly or in combination, meet or equal the requirements of any section or sections in Appendix 1, Subpart P, Regulation No. 4, including Section 12.04 (Affective Disorders), or Section 12.06 (Anxiety-Related Disorders).

The ALJ found that, given the remote nature of the plaintiff's past work, it can no longer be considered vocationally relevant. He further found that the plaintiff retains the residual function capacity necessary to perform unskilled, "light" work activity that requires only limited public contact. The ALJ also found that the plaintiff's allegations about the debilitating nature of his pain and other symptoms were not consistent with the objective evidence presented. The ALJ stated that, given the plaintiff's age, education and vocational factors, Medical Vocational Rules 202.13 and 202.20, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 can be used in combination as a "framework" to make a finding of "not disabled."

The ALJ concluded that the plaintiff is not under a "disability" as defined within the Social Security Act, and has not been under a "disability" at any time since October 3, 2001. The

ALJ's decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review.

The history of this case is well summarized in the record. Consequently, the court will only engage in a limited discussion of the facts relevant to this decision.

## **APPLICABLE LAW**

The Social Security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medical impairment that can be expected to last for over twelve months." 42 U.S.C. § 423(d)(1)(A). In order to determine whether a plaintiff is so disabled, the ALJ is required to evaluate in sequence: 1) whether the plaintiff is currently employed; 2) whether the plaintiff has a severe impairment; 3) whether his impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1, which the Commissioner acknowledges to be conclusively disabling; 4) whether the plaintiff can perform his past relevant work; and 5) whether the plaintiff is capable of performing any other work in the national economy given his age, education and work experience. Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000); Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995); Wolfe v. Shalala, 997 F.2d 321, 322-23 (7th Cir. 1993).

Once the plaintiff has satisfied steps one and two, he will automatically be found disabled if he suffers from a listed impairment. If the plaintiff does not have a listed impairment but cannot perform his past work, the burden shifts to the Commissioner to show that the plaintiff can perform some other job. See Allen v. Sullivan, 977 F.2d 385, 387 (7th Cir. 1992); Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984).

The plaintiff bears the burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5). However, once the plaintiff has demonstrated an impairment of sufficient severity to preclude the kind of work in which he was previously engaged, the burden shifts to the

- 3 -

Commissioner to prove that some other kind of substantial gainful employment exists which the plaintiff is able to perform. Zurawski v. Halter, 245 F.3d 881, 886 (7th Cir. 2001); Tom v. Heckler, 779 F.2d 1250, 1252-53 (7th Cir. 1985).

To expedite the carrying of this burden, the Commissioner has promulgated 20 C.F.R. Part 404, Subpart P, App. 2, the "Medical-Vocational Guidelines," commonly referred to as the "grid." The rules of the "grid" reflect the analysis of the various vocational factors (that is age, education and work experience) in combination with the individual's residual functional capacity (his maximum sustained work capability for sedentary, light, medium, heavy or very heavy work) in evaluating the individual's ability to engage in substantial gainful activity in other than his vocationally relevant past work.

Where the findings of fact, made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is disabled. See Cummins v. Schweiker, 670 F.2d 81, 82 (7th Cir. 1982). However, each of these findings of fact is subject to rebuttal and the individual may present evidence to refute said findings. Where any of the findings of fact do not coincide exactly with the corresponding criteria of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled. Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983); Smith v. Schweiker, 735 F.2d 267, 271 (7th Cir. 1984).

Nonetheless, the Commissioner is permitted to conclude that a nonexertional limitation, while present, has no significant impact on an individual's capacity to perform the range of work he is otherwise exertionally capable of performing, making proper application of the grid. Caldarulo v. Bowen, 857 F.2d 410, 413 (7th Cir. 1988) (citing Smith v. Schweiker, 735 F.2d 267, 272 n.3 [7th Cir. 1984]). In any event, there must be reliable evidence of some kind which

would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available. Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 535 (7th Cir. 1992) (citing Warmoth v. Bowen, 798 F.2d 1109, 1112 [7th Cir. 1986]).

Review of the Commissioner's decision is limited. Diaz v. Chater, 55 F.3d 300, 305 (7th Cir. 1995). "The Social Security Act specifically provides that 'the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.'" Jones v. Shalala, 10 F.3d 522, 523 (7th Cir. 1993), see also, Powers v. Apfel, 207 F.3d 431, 434 (7th Cir. 2000); 42 U.S.C. § 405(g). "Although a mere scintilla of proof will not suffice to uphold the [Commissioner's] findings, the standard of substantial evidence requires no more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Diaz, 55 F.3d at 305 (quoting Richardson v. Perales, 402 U.S. 389, 401 [1971]); see also, Zurawski, 245 F.3d at 887.

In reviewing the decision of the Commissioner, this court is obligated to review all the evidence contained in the record and such review "must be more than an uncritical rubber stamp." Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). This court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. Richardson, 402 U.S. at 401; Powers, 207 F.3d at 434-35; Jones, 10 F.3d at 523. However, even if substantial evidence supports the Commissioner's findings, this court may reverse if the ALJ committed an error of law. Pugh v. Bowen, 870 F.2d 1271, 1274 (7th Cir. 1989).

## **ANALYSIS**

At the outset, the court notes that the plaintiff appeared at the hearing pro se. Although not raised by the parties, the court will briefly address whether the plaintiff adequately waived his right to counsel. Although a plaintiff has a right to counsel at an administrative hearing,

- 5 -

Binion v. Shalala, 13 F.3d 243, 247 (7th Cir. 1994), a plaintiff may waive that right. Id.; see also, Skinner v. Astrue, Case No. 05-4094, slip op. at 8 (7th Cir. Mar. 7, 2007); Thompson v. Sullivan, 933 F.2d 581, 585-86 (7th Cir. 1991). To ensure a valid waiver of the right to counsel, the ALJ is required to explain to a pro se claimant:

> (1) the manner in which an attorney can aid in the proceedings; (2) the possibility of free counsel or a contingency arrangement; and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of those fees.

Skinner, slip op. at 8; Binion, 13 F.3d at 245; Thompson, 933 F.2d at 584.

An inadequate notice of the right to counsel, however, only entitles the plaintiff to a remand if the ALJ failed to develop a full and fair record. Binion, 13 F.3d at 245. Where a plaintiff is unassisted by counsel, the ALJ has a duty "scrupulously and conscientiously to probe into, inquire of, and explore for all the relevant facts." Binion, 13 F.3d at 245; Thompson, 933 F.2d at 585-86 (quoting Smith v. Secretary of Health, Ed. and Welfare, 587 F.2d 857, 860 [7th Cir. 1978]). The ALJ's duty "is met if the ALJ probes the claimant for possible disabilities and uncovers all of the relevant evidence." Binion, 13 F.3d at 245. This special duty assigned to the ALJ "requires, essentially, a record which shows that the plaintiff was not prejudiced by the lack of counsel." Thompson, 933 F.2d at 586 (citation omitted). If a valid waiver is not obtained, the burden is on the Commissioner to show that the ALJ adequately developed the record. Skinner, slip op. at 8 (citing Binion, 13 F.3d at 245). If the Commissioner meets her burden of proving that the record was developed fully and fairly, the plaintiff is given the opportunity to rebut this showing by "demonstrating prejudice or an evidentiary gap." Binion, 13 F.3d at 245.

In this case, the plaintiff was informed, prior to the hearing, of his right to representation in a Supplemental Security Income Notice dated April 12, 2002. The notice provided, in part:

> You can have a friend, lawyer or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security Office has a list of groups that can help you with your appeal.
>
> If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before s/he can collect it.

(Tr. 32). This same language was also included in the Supplemental Security Income Notice of Reconsideration dated September 27, 2002. (Tr. 38).

Additionally, at the April 2004, hearing, the ALJ informed the plaintiff that he had "a right to have an attorney or a non-attorney representative assist you in the hearing" and that "such person might be able to get more relevant information into the file than is currently here." (Tr. 386). He also explained that such person could assist in an appeal. The ALJ told the plaintiff that he had a right to proceed on his own. The plaintiff decided that he wanted to proceed by himself. (Tr. 387).

The plaintiff received information regarding his right to counsel and the benefits of having counsel, but he was not advised about the limitation of attorneys' fees to 25 percent of past due benefits or that such fees are subject to court approval. Even assuming that such notice is required in SSI cases,[1] the ALJ fully and fairly developed the record. Binion, 13 F.3d at 245.

In this case, the ALJ admitted all of the plaintiff's records into evidence at the hearing, including updated medical records from November 2004. The ALJ has the responsibility to develop a claimant's "complete medical history." 20 C.F.R. § 404.1512(d); see also, Luna v. Shalala, 22 F.3d 687, 692 (7th Cir. 1994). The updated medical records indicate that the

---

[1] Title 42, United States Code, § 406(b)(1)(A) and 20 C.F.R. § 404.1730(b)(l) allow the withholding of up to 25 percent of past-due benefits to pay attorney's fees with respect to claims for disability insurance benefits. There is no corollary provision for the withholding of past-due benefits in SSI cases. See Bowen v. Galbreath, 485 U.S. 74, 76-77, 79 (1988).

- 7 -

plaintiff had been diagnosed with Type II diabetes and included a diabetic education program for the plaintiff.

The ALJ questioned the plaintiff in detail about each of his diagnosed problems, including his panic attacks, sleep apnea, depression and diabetes. He explored the effect of each condition on the plaintiff and on his daily activities. He also inquired about the medications the plaintiff was taking and how often he sought medical treatment for his health problems. The ALJ noted that the plaintiff had a hernia repair in 2001. The plaintiff had complained of shortness of breath and lower abdominal pain following the hernia surgery. (Tr. 333). The ALJ asked the plaintiff if he had any further problems with his hernia. The plaintiff advised that he was told he had a new hernia, but that he had not yet sought treatment for it. Although the plaintiff experienced problems with shortness of breath and abdominal pain following the hernia surgery, these problems dissipated as the plaintiff subsequently denied shortness of breath, nausea or lightheadedness. (Tr. 341).

The ALJ also questioned the vocational expert about the jobs the plaintiff could perform given his residual functional capacity and his vocational profile. Upon careful review of the record, the court concludes that the ALJ adequately developed the record in this case.

The plaintiff challenges the ALJ's conclusion that he retained the residual functional capacity to perform a reduced range of light work. The ALJ found that the plaintiff was able to perform unskilled light work which requires only limited contact with the public.

The evidence shows that the plaintiff has a history of sporadic chest pain for which he was seen at the emergency room on two occasions - March 17, 2001, and July 16, 2003. However, the ALJ observed that there is no evidence in the record that the plaintiff has been diagnosed with coronary artery disease or any related condition. The objective medical evidence shows that the plaintiff's pulmonary function tests revealed normal findings. (Tr. 138,

- 8 -

159, 174). The June 22, 2001, pulmonary function study did not show any evidence of obstructive lung disease. (Tr. 174). Stress tests and chest x-rays were all negative. (Tr. 177).

The plaintiff was diagnosed with sleep apnea, but his condition responded well to treatment using a Continuous Positive Airway Pressure (CPAP) breathing machine. According to the plaintiff's medical records from St. Luke's Sleep Disorders Center, utilization of the nasal CPAP device "obliterates most respiratory disruptions of sleep, resulting in improved sleep condition and satisfactory oxygenation." (Tr. 361). The plaintiff also reported that his condition was "markedly improved" with use of the device. (Tr. 360). At the time of the second hearing, the plaintiff reported that he was not using his CPAP machine because he did not understand how to use it. He did not go back to his physician to obtain further explanation so that he could use the machine.

The ALJ observed that the plaintiff was diagnosed with Type II diabetes mellitus and advised to modify his diet, exercise three to four times a week and check his blood sugars twice a day. The plaintiff testified at the hearing that the only medication he takes is Actos for his diabetes. (Tr. 399). He has not seen any physician in over a year.

With respect to the plaintiff's emotional and psychological problems, the ALJ stated that the plaintiff had been diagnosed with dysthymia and panic disorder with agoraphobia. The ALJ observed that the treatment notes indicate "[d]ifficulties with impaired motivation, resistance to change, interacting with others, maintaining relationships, functioning in social situations and coping with stressful situations. (Tr. 14). Despite the plaintiff's depression and anxiety-related symptoms, the ALJ observed that the notes and statements in the record demonstrate that the plaintiff has been able to care for his personal needs, complete household activities, and maintain relationships with his mother and treatment providers. He also had been involved in buying and selling antiques, but had to stop due to lack of funds. (Tr. 399). The plaintiff also

- 9 -

testified at the second hearing that he had not experienced a severe panic attack for two years and that he had not seen a doctor for his depression since the previous year.

The record before the ALJ included the reports of two state agency psychologists who reviewed the medical records in April 2002 and again in September 2002. They assessed the plaintiff's ability to perform mental work-related activities. (Tr. 192-208). The doctors found that the plaintiff had moderate limitations with respect to the ability to interact with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers, and to maintain socially appropriate behavior. They also found that the plaintiff was not significantly limited in his ability to carry out detailed instructions, to perform activities within a schedule, to maintain regular attendance and be punctual within customary tolerances and to sustain an ordinary routine without special supervision. (Tr. 192).

The ALJ noted that although the plaintiff may have some functional limitations as a result of his diagnosed impairments, the record was devoid of any objective evidence which showed that such limitations would preclude the plaintiff from engaging in substantial gainful activities. The ALJ discounted the plaintiff's claims of complete debilitation as a result of his diagnosed impairments, concluding that such claims are not supported by the objective evidence in the record. No doctor concluded that the plaintiff was more severely limited than the ALJ found him to be. Moreover, the plaintiff has not identified any evidence that significantly conflicts with the ALJ's findings.

Thus, the ALJ concluded that the plaintiff retains the residual functional capacity to perform "light" work activity. However, given the plaintiff's psychological and emotional issues, the ALJ determined that the plaintiff's residual functional capacity should be further reduced by non-exertional limitations relating to the need for unskilled work with only limited public contact.

The ALJ also relied on the testimony of a vocational expert. He posed a hypothetical question to the vocational expert which addressed the plaintiff's stated limitations, including his reported hernia and inability to interact with or be around the public on an ongoing basis. The vocational expert considered the plaintiff's residual function capacity and vocational profile and identified some 53,000 unskilled jobs in the light exertional category that involved limited public contact which the plaintiff could perform.

The ALJ's assessment of the plaintiff's residual functional capacity is supported by substantial evidence in the record. Furthermore, the testimony of the vocational expert was based on a hypothetical question which took into account all of the plaintiff's functional limitations. Given the plaintiff's vocational factors and the testimony of the vocational expert upon which the ALJ relied, substantial evidence supports the ALJ's decision that the plaintiff is not disabled because there are a significant number of jobs available to him which the plaintiff could perform. See Lee v. Sullivan, 988 F.2d 789, 794 (7th Cir. 1993) (upholding finding of not disabled based upon testimony of vocational expert identifying 1,400 job positions which the plaintiff, who had a limited residual functional capacity to perform sedentary and light work, could do within the greater Milwaukee metropolitan area). Accordingly, the court concludes that substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled. Therefore, the plaintiff's appeal will be denied.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's appeal be and hereby is **denied**.

**IT IS ALSO ORDERED** that this case be and hereby is **dismissed**.

**IT IS FURTHER ORDERED** that the Clerk of Court be and hereby is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 23rd day of March, 2007.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge